515 So.2d 860 (1987)
Edgar MONROE
v.
STATE of Mississippi.
No. 57050.
Supreme Court of Mississippi.
September 9, 1987.
Rehearing Denied December 9, 1987.
*861 William B. Kirksey, Kirksey & DeLaughter, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the Court.
Edgar Monroe appeals his conviction of robbery and 15-year sentence as a recidivist rendered in Hinds County Circuit Court. Monroe was indicted for armed robbery and also indicted as a recidivist under Miss. Code Ann. § 99-19-81 (Supp. 1986).
The indictment alleged Monroe on May 1, 1984, robbed Judy Spates of $40 and a gold necklace by displaying a weapon. The jury found him guilty of the lesser-included offense of robbery. Following a hearing, the circuit court found Monroe to be a recividist, and the court sentenced him to 15 years in the custody of the Mississippi Department of Corrections without parole.
Monroe appeals, assigning four errors, but he argues only three to this Court:
I. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF ASSAULT, SINCE ASSAULT IS A CONSTITUENT OFFENSE OF ROBBERY AND ARMED ROBBERY.
II. PLAIN ERROR WAS COMMITTED WHEN THE PROSECUTION, THROUGH ITS CROSS-EXAMINATION OF JETHRO JONES, APPELLANT'S ACCOMPLICE, IMPERMISSIBLY COMMENTED ON, OR MADE INSINUATION OF, APPELLANT'S CONSTITUTIONAL RIGHT TO REMAIN SILENT.
III. APPELLANT'S SENTENCE AS AN HABITUAL OFFENDER SHOULD BE REVERSED AND *862 RENDERED AS IT IS BASED UPON INSUFFICIENT ADMISSIBLE EVIDENCE AND AS A RESULT OF A FUNDAMENTALLY DEFECTIVE SENTENCING HEARING.

FACTS
Judy Spates went to the home of girlfriend Kathy Harris on May 1, 1984, accompanied by several other friends. Judy intended to ask Kathy if she would accompany them to a movie.
Judy and the others arrived at Kathy's house on the corner of Douglas and Collier Streets in Jackson sometime after dark. Judy set the time around 8:00 p.m. or maybe 7:50 p.m.
Unknown to Judy, neither Kathy nor her husband was home. Instead, Judy Spates was greeted at the kitchen door around back by someone answering to the name of Kathy's husband, Kenneth. The house was dark, and Kathy did not see the occupant before she entered. She moved to light her cigarette lighter when a man came up beside her and took it. She could tell there were two men in the room. The man who took the lighter struck it to show Judy a badge, and told her they were police officers involved in a drug bust.
The two men took Judy into the next room, a living room or a den, where she was pushed to the floor. She felt a hand search her arms and neck, and her pockets were frisked. Judy stated she didn't notice that a gold necklace and $40 in case were missing "until after everything happened."
She was taken to a different room. She tried to escape by running to the back door where she had entered. One of the men was waiting and grabbed her, however, and took her back into the front room. She said the taller of the two men, later identified as Jethro Jones, then struck her in the face with something hard. She later saw what she thought was a gun in the faint light shining in the window. The blow bloodied and broke her nose and later the wound required 12 stitches to close. The men took her back to a bedroom where her feet were bound with a cloth and her hands were bound with a coat hanger. She managed to free her hands and dove through the paned glass window to freedom.
Police arrested appellant Edgar Monroe and Jethro Jones based on a description of the car in which two men drove off after fleeing from the house.
Though Judy Spates did not see either man's face, she heard both their voices and saw each man's physical features. She identified both Monroe and Jones at lineups by their builds and their voices.
Monroe gave a statement to police admitting that he was in the home, but denying that a robbery occurred. He told police that he and Jones were running a con game in hopes of ripping off drugs at a "dope house," where they suspected someone was dealing drugs. He said that Spates hurt herself diving through the window. Monroe denied having a pistol.
The house previously had been used by a George Smith, who had recently been released from the penitentiary on probation for a drug offense conviction, Jackson Police Detective C.M. Criscoe testified. Smith was apprehended prior to May 1, 1984, on a parole violation, and Criscoe stated that he had found no evidence that the house was currently being used for drug dealings.
Jethro Jones testified on behalf of Monroe. Jones previously had been convicted of robbery in connection with this incident and sentenced to 15 years. Jones did not testify in his own trial, but testified basically consistent with Monroe's statement to police.
Jones testified that Judy Spates had come up to the house looking to purchase some marijuana. She came around to the back of the house and Monroe let her in after she refused to accept Jones' statement that nothing was going on.
Spates gave $25 to Monroe, Jones stated, apparently expecting to purchase marijuana. It was at this time that Jones flashed his officer's badge, obtained in a New Orleans pawn shop, and told Ms. Spates that she was under arrest. He had no gun. Jones said Ms. Spates panicked and tried to *863 run. Jones did not strike her but spoke harshly and tied her up in the back bedroom.
The jury was instructed concerning armed robbery, robbery and larceny. The jury found Monroe guilty of robbery.
Following a pre-sentencing hearing, the trial court found Monroe to be an habitual offender as charged in the indictment, and sentenced Monroe to 15 years without benefit of parole.

I. Did the Trial Court Err in Failing to Grant Instructions as to Simple or Aggravated Assault?
Monroe was indicted for armed robbery. The jury was instructed concerning the lesser-included offenses of robbery and petit, rather than grand, larceny since there was no evidence as to the gold necklace's value.
Here Monroe argues that the trial court erroneously denied his request for lesser-included offense instructions as to simple and aggravated assault.
Monroe relies on Presley v. State, 321 So.2d 309 (Miss. 1975) to argue that assault is a lesser-included offense of robbery. Presley was decided on the basis of a previous assault and battery statute.
The trial court agreed with defense counsel that assault is a lesser-included offense of robbery, but stated, "I just don't believe this is a proper instruction on the facts of this case."
The cases are legion in this Court holding that lesser-included offense instructions must be warranted by the evidence. Messer v. State, 483 So.2d 338 (Miss. 1986); Lee v. State, 469 So.2d 1225 (Miss. 1985); Lambert v. State, 462 So.2d 308 (Miss. 1984); Stevens v. State, 458 So.2d 726 (Miss. 1984); Lacy v. State, 432 So.2d 1205 (Miss. 1983); Colburn v. State, 431 So.2d 1111 (Miss. 1983); Johnson v. State, 416 So.2d 383 (Miss. 1982).
This Court has stated that the evidence in a particular case generally warrants granting a lesser-included offense instruction if a "rational" or a "reasonable" jury could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense. See Harveston v. State, 493 So.2d 365, 374 (Miss. 1986); Fairchild v. State, 459 So.2d 793 (Miss. 1984). See also, Harper v. State, 478 So.2d 1017 (Miss. 1985); Harbin v. State, 478 So.2d 796 (Miss. 1985); Lee v. State, 469 So.2d 1225 (Miss. 1985).
Though the trial court did not explain it, its reasoning clearly was based on Monroe's evidence. Monroe's only witness was alleged accomplice Jethro Jones. Jones testified that he and Monroe had gone to the house at the corner of Douglas and Collier Streets intending to rip off the "dope house." It is unclear whether or not Monroe and Jones intended to trick anyone out of money when he went to the house, but Jones stated that was the reason he initially purchased the badge at a pawn shop in New Orleans. Judy Spates actually gave $25 to Monroe for some marijuana before he flashed the badge and told her she was busted, Jones testified. Regardless of what they might originally have intended, Jones' testimony showed that he and Monroe actually tricked Ms. Spates out of money at the "dope house." Thus, Monroe's own evidence implicates him in the crime of larceny by fraud or possibly false pretenses. See Russell v. State, 391 So.2d 987, 990 (Miss. 1980).
Even considering the proof in the light most favorable to the accused, and keeping in mind that the jury may not be required to believe any evidence offered by the state, Fairchild v. State, 459 So.2d at 801, Monroe's own proof was that Judy Spates was tricked out of $25. This is not a case where the state's proof could have been disbelieved. Here the jury would have had to disbelieve both the defense and the prosecution witnesses. It would seem that no rational or reasonable juror could have convicted Monroe of merely simple or aggravated assault. The only question for the jury was whether Monroe and Jones took the money by force or merely by trick.
We agree that the evidence did not support a lesser-included offense instruction on assault. There is no error.

*864 II. Did the Prosecution Impermissibly Comment on Defendant's Failure to Testify?
Under this assignment, Monroe argues that the assistant district attorney made what amounted to an impermissible comment on his failure to testify when cross-examining accomplice Jethro Jones. Jones, who prior to Monroe's trial had been convicted of robbery, did not testify in his own trial but took the stand on behalf of Monroe.
Monroe points to this exchange:
Q. It's a yes or no question. Do you have a problem taking the stand, taking an oath and telling people what happened over there?
A. Oh, no, mam.
Q. So I guess you would have taken the stand and taken the oath and told all those people who were the jury in your own trial, isn't that right, Jethro?
A. Pardon?
Q. I guess you would have no problem taking the stand, taking an oath and telling the Jury in your own trial what happened, isn't that right?
A. Well, my lawyer didn't want me to take the stand.
Q. Oh, your lawyer didn't want you to take the stand. You didn't get up there and testify in your own trial, did you?
A. No, mam, I didn't.
Q. Does your lawyer want you to take the stand today?
A. Does he want me to take the stand today?
Q. Right.
A. Well, this isn't the same lawyer that I got.
Q. Does your lawyer want you to take the stand today?
A. Well, he advised me that, you know, of my rights, you know, about it.
Q. Yes or no, Jethro. Did your lawyer tell you he thought it would be a good idea for you to take the stand today?
A. Well, he just advised me of my rights. He said, you know, maybe, you know, something could be `criminating against me, you know. I had the own choice myself.
Q. Did he tell you yes or no would it be a good idea for you to testify?
A. Well, like I'm saying, he gave me the choice.
Q. Well, did your lawyer in your own trial give you a choice?
A. Well, he asked me, told me say it would be, you know, to  to my advantage if I didn't take the stand.
Q. The lawyer in your own trial advised you the same way that this lawyer did, didn't he?
A. He didn't say the same thing.
Q. Are you telling the ladies and gentlemen of this Jury that when you sat over there in your own trial the Judge that sat on bench didn't take you aside and say, "Jethro, you have the right to testify if you want to."?
A. He told me that I had the right to testify if I want to. The Judge did.
Here, contemporaneous objection was not made at trial; therefore, this Court could apply our procedural bar to prevent Monroe from arguing this error on appeal.
However, this Court has characterized commenting on a defendant's failure to testify as violating "an elementary and long established principle of law." West v. State, 485 So.2d 681, 687 (Miss. 1985) (citations omitted).
Further, since the criminal defendant's right not to testify on his own behalf is protected by both the State and the United States Constitutions, we are not precluded from reviewing alleged constitutional violations even though defense counsel fails to make contemporaneous objections.
Griffin v. State, 504 So.2d 186, 193 (Miss. 1987)
We hold that even reaching the merits of Monroe's claim, he cannot prevail.
*865 In the recent case of Bridgeforth v. State, 498 So.2d 796, 797 (Miss. 1986), this Court stated:
Mississippi Code Annotated, § 13-1-9 (1972), says "The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel." (Emphasis added.) This statute was cited as far back as 1893 in the case of Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893), in which this Court stated:
The word "comment" as employed in the statute, does not mean to criticize or condemn or anathematize the accused on his failure to testify. It forbids, in unmistakable language, any comment, friendly or unfriendly. It forbids any remark, of any character, in any words, upon the failure of the accused to testify. The attention of the jury is not to be called to the fact at all by counsel.

Yarbrough, 70 Miss. at 594, 12 So. 551. (Emphasis added.)
This rule forbids insinuation and innuendo as well as direct comments. Wilson v. State, 433 So.2d 1142, 1146 (Miss. 1983).
Intent might be enough in and of itself, see United States v. Chisem, 667 F.2d 1192, 1195 (5th Cir.1982); see also, United States v. Eiland, 741 F.2d 738 (5th Cir.1984). Objectively, there appears to be no intent here, however, since the prosecution and Monroe's counsel both were under the impression that Monroe was going to testify.
Intent to violate the rule is not necessary if the prosecutor's statement can reasonably be construed by a jury as a comment on the defendant's failure to testify. Griffin v. State, 504 So.2d 186, 193 (Miss. 1987); Davis v. Smith, 406 So.2d 795 (Miss. 1981); Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895). Cf. Russell v. State, 506 So.2d 974, 976 (Miss. 1987).
The only question here is whether the exchange between the assistant district attorney and Jethro Jones could be construed by a reasonable jury as a comment on Monroe's failure to testify.
There can be no question that the comments were directed principally toward Jones. For Monroe to prevail, this Court must find that this questioning also commented on Monroe's failure to testify.
In Griffin, 504 So.2d at 193, the Court found no error in the following comment made by the prosecution in closing argument during defendant's trial for murder:
... the defendant's niece. The only person  on voir dire said I said, "Tell us who your witnesses are going to be." She's the only name we were given. And why? Why? We found out yesterday, didn't we? Because he had called her and said, "Tell him Debra brought the gun out there." And she played along with him. And we found out about it. And we confronted her with it. And she said, "Okay, I'll tell the truth." And she took the stand and did. And all of a sudden they don't have that witness any more. That one great witness they told us that they were going to call. We couldn't imagine why they were going to call her. But we found out. If he's so innocent, if that's another witness that didn't have anything to say, why did he bother to call her? Why did he bother to ask her to lie?
In Bridgeforth this Court again found no error in allowing the following comment during voir dire:
Now I want you all to understand that this trial will not be like the ones you see on TV. So don't expect anyone to jump up in the back of the courtroom and admit to committing the crime. I don't expect that to happen any more than I expect the defendant to confess committing the crime.
498 So.2d at 797 (reversed on other grounds). Though this comment was not reversible error in Bridgeforth, this second comment made during closing argument was: "[T]he respectable citizens of DeSoto County don't know what Alonzo Bridgeforth, Jr., does and he (Bridgeforth) doesn't tell the good folks what he does." 498 So.2d 797.
*866 Most recently in Russell v. State, 506 So.2d 974, 976 (Miss. 1987), this Court found no reversible error in the following comment made during argument at the close of defendant's trial for gratification of lust:
It's time for you to stand up for the system of your community  to take a listen to a child like [the victim]  and not to mention [the victim's sister]. Let them come up here and say [the victim's sister] was lying. All you are left with is what you heard from those two little girls, from their mother and from the police officer who arrested the defendant. And, in all their testimony 
The numerous cases cited by Monroe are easily distinguished. All involve either direct comments, or comments in which the prosecuting attorney pointed out to the jury that evidence was not denied or disputed when the only other potential witness would have been the defendant. See Peterson v. State, 357 So.2d 113 (Miss. 1978); Hines v. State, 339 So.2d 56 (Miss. 1976) (proof not denied); Harris v. State, 96 Miss. 379, 50 So. 626 (1909) (same); Smith v. State, 87 Miss. 627, 40 So. 299 (1906) (same); Sanders v. State, 73 Miss. 444, 18 So. 541 (1895); Reddick v. State, 72 Miss. 1008, 16 So. 490 (1985); Wilson v. State, 433 So.2d 1142 (Miss. 1983) (defendant did not explain away state's incriminating evidence); Brown v. State, 340 So.2d 718, 719 (Miss. 1976) (state's proof "undisputed"); Chatman v. State, 244 Miss. 659, 145 So.2d 707 (1962) (same); Prince v. State, 93 Miss. 263, 46 So. 537 (1908) ("uncontradicted" out-of-court confession); Harwell v. State, 129 Miss. 858, 93 So. 366 (1922) (direct comment); Gurley v. State, 101 Miss. 190, 57 So. 565 (1912) (same); Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893) (same).
Each case suggesting an improper comment must be decided on its own facts. Peterson v. State, 357 So.2d at 117.
We have reviewed the examination of Jethro Jones with great care. While it might be a close question, we think the questioning was a legitimate attempt to impeach Jones' credibility and was not calculated to raise Monroe's silence in the jurors' minds. The questioning does not carry an automatic implication that Monroe has remained silent, and we hold that the questioning cannot reasonably be so construed.
This assignment of error is denied.

III. Was Monroe's Sentence as a Recividist Under Miss. Code Ann. § 99-19-81 (Supp. 1986), Based on Insufficient Evidence or the Result of Fundamentally Defective Sentencing Hearing?
Monroe was indicted and later sentenced as an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1986). The indictment alleged Monroe had twice previously been found guilty of felonies; an August 16, 1973 conviction of armed robbery in the Circuit Court of Hinds County, and a November 26, 1984 conviction of strong arm robbery in the Circuit Court of Yazoo County.
The 1973 conviction was sought to be proved by a certified copy of the sentencing order provided by the Circuit Clerk of Hinds County, whereby Monroe was sentenced to 15 years suspended with five years probation. This certified copy was admitted without objection.
The 1984 conviction of strong arm robbery was sought to be proved by a copy of a sentencing order with the following heading:
"IN THE CIRCUIT COURT OF THE SEVENTH CIRCUIT DISTRICT OF YAZOO COUNTY, MISSISSIPPI"
The sentencing order recites that Edgar Monroe plead guilty to strong arm robbery and was sentenced to 15 years in the custody of the Mississippi Department of Corrections, to be served concurrently with a parole revocation being currently served. At bottom is a signature of a circuit judge and a seal stamped over the following attestation:
Attest a true copy this 30th day of Nov. 1984
Mrs. Ruth G. Waller, Circuit Clerk
By: Ruth G. Waller
*867 Monroe objected to admission of this sentencing order on the grounds that it was not a certified copy. Thereafter, the trial court admitted the copy "for whatever probative value it may have." The prosecution subsequently elicited testimony from assistant district attorney Tommy Mayfield that he prepared the sentencing order, and it was signed in his presence by the circuit court judge at the time he presented it.
In addition to this evidence, the trial court heard testimony concerning other offenses for which Monroe was indicted or convicted, and heard testimony from Monroe himself in mitigation of impending sentencing.
On appeal Monroe first argues that the admission of matter extraneous to the indictment requires reversal.
The setting of this case requires explanation. Monroe was convicted and sentenced after our decision in Presley v. State, 474 So.2d 612 (Miss. 1985). In Presley this Court reversed a 40-year sentence without benefit of parole following a conviction of armed robbery. Presley had been indicted as an habitual offender and was convicted of stealing a steak, supposedly with the aid of a knife. The jury did not set punishment. This Court reversed the sentence, stating that there are cases where "the trial court must consider all facts, background and record in a sentencing hearing in order that a just and proper sentence may be imposed." Presley, 474 So.2d at 620.
We trust it has become clear since Presley was decided that Presley was based on a peculiar circumstance. Presley was indicted as an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1986). Since upon conviction of armed robbery under Miss. Code Ann. § 97-3-79 (Supp. 1986) the jury did not sentence him to life, the trial court was vested with the discretion to impose sentence at something reasonably less than life. Friday v. State, 462 So.2d 336, 339 (Miss. 1985). See also, Watkins v. State, 500 So.2d 462 (Miss. 1987). Thus, Presley represents a case where a sentence imposed at the discretion of the trial court becomes a sentence without benefit of parole if habitual offender status be proved.
It follows that where the trial court has no discretion in sentencing, a Presley-type hearing is not generally required.
In this case, a full hearing was not required. The trial court had no discretion if the habitual offender charge be proved. The prosecution needed only to prove the convictions underlying the indictment, and, if proved, the sentence of 15 years without benefit of parole was mandated by Miss. Code Ann. § 99-19-81 (Supp. 1986). See Burt v. State, 493 So.2d 1325 (Miss. 1986).
Admission of evidence of other crimes, while unnecessary, was harmless error at best, since Monroe's sentence must stand or fall against the proof of the underlying offenses as charged in the indictment.
Monroe's second argument focuses on the perceived inadequacy of the proof of the underlying offenses. He points to the sentencing order for the November 24, 1984 conviction of strong arm robbery. Monroe argues that our law requires that only a certified copy of public records may be admitted. He refers to Miss. Code Ann. 13-1-77 (1972). That section provides:
State custodian of books authorized to certify copies; admissibility of copies.
All public officers in this state having the charge or custody of any public books, records, papers, or writing, are authorized to certify copies of the same, which copies shall be received in evidence in all cases where the original or a sworn copy would be evidence.
We do not take Monroe to argue that the sentencing order, if properly certified, would be inadequate proof.
In DeBussi v. State, 453 So.2d 1030, 1031 (Miss. 1984), this Court stated:
Mississippi's position on proof of prior convictions respects the substance of the best evidence rule: If the actual judgment of conviction is not introduced, it may only be proved by documents accorded equivalent evidentiary weight by statute.
We have regularly upheld sentences under the habitual criminal statutes *868 where the proof of prior convictions was made by certified copies of the judgments of conviction. Baker v. State, 394 So.2d 1376 (Miss. 1981); Jackson v. State, 418 So.2d 827 (Miss. 1982); Crawley v. State, 423 So.2d 128 (Miss. 1982). This accords with the basic principle that the best evidence of a conviction is the judgment of conviction. McGowan v. State, 269 So.2d 645 (Miss. 1972); Brown v. State, 222 Miss. 863, 77 So.2d 694 (1955).
See also Stringer v. State, 500 So.2d 928, 942 (Miss. 1986).
We think the order, if properly certified, is one which meets the best evidence objections. The question is, is this order properly certified?
At the outset we must make clear that this issue is not governed by the Mississippi Rules of Evidence, effective January 1, 1986. Monroe was tried in early October 1985, so we must rely on our statutory and common law rules of evidence.
Similar future questions must be governed by M.R.E. 901(7), 902(1) and (4). See 5 D. Louisell & C. Mueller, Federal Evidence, § 532 (1981) for a helpful analysis of a similar problem under the Federal Rules of Evidence.
Since certified copies are admissible, certification becomes the authenticating mechanism for admitting copies as originals. The certification provides self authenticity by which a copy might be admitted without further assurances of its genuineness. This statute is no more than a reflection of this country's common law.
As a substitute for an original public record, which ought not to be constantly removed, our courts have long recognized the original should be permitted to be evidenced by "a copy given by a public officer whose duty it is to keep the original."
5 J. Weinstein & M. Berger, Weinstein's Evidence, § 902(4)[01], at 902-25 (1983).
Theoretically, however, this certification contains two components. Even if the custodian has made his attestation, the court must know that the custodian's attestation is genuine. McCormick states the issue thusly:
[H]ow is the court to know without proof that the signature or seal appearing on the writing is actually that of the official whose name and title are recited?
McCormick on Evidence, § 228 at 700 (E. Cleary ed. 1984). The authors note that many states have eliminated this hurdle by statute. We think this was the purpose of Miss. Code Ann. § 13-1-77 (1972). Our statute provides that a certified copy from the custodial state officer "shall be received in evidence in all cases." We think the intent of the statute was to allow domestic judicial records to be received without the need for authenticating the certification. We pause to note that this seems to be the position of our new Mississippi Rules of Evidence. See M.R.E. 902(4) and (1). While the rules are not controlling, they provide additional support for our position.
The only question left is whether the sentencing order was properly certified. We hold that it was.
Neither Miss. Code Ann. § 13-1-77, nor any other provision dealing with admissibility of other public records define what qualifies as a certified copy.
It is generally held that no particular words are reqiured for a proper certification. See generally, 30 Am.Jur.2d Evidence § 1013 (1967).
Black's Law Dictionary defines a "certified copy" as "A copy of a document or record, signed and certified as a true copy by the officer to whose custody the original is intrusted." Black's Law Dictionary, 207 (5th Ed. 1979). To certify is "[t]o authenticate or vouch for a thing in writing. To attest as being true as represented." Id.
There are two kinds of documents which are recognized by the law in respect to the manner of authentication  attested and unattested. An attested document must be proved by the attesting witness. An unattested document must be proved by testimony as to the handwriting of the maker. A domestic judicial record is sufficiently authenticated by the mere *869 production of the original from the appropriate official custody; by an exemplification under the seal of the state; or by the court having custody of the record; by the certificate, with the seal of the court affixed, by the lawful custodian, as the clerks of the courts, whose authority to certify is presumed; by an examined copy, proved to be a true copy, by a witness who personally compared the copy produced, with the original.
T. McElroy, Mississippi Evidence, § 61 at 259-60 (1955)
The certification at bar contains an attestation that the copy is true and correct, and the attestation bears the seal of the court. Without the seal, our decision might be different, but the attestation and accompanying seal sufficiently authenticate this document.
Monroe argues that lack of a book and page number are fatal. We do not agree. As Black's Dictionary and McElroy make clear, what is required is a copy signed and certified as true by the officer whose custody the original is entrusted. A certification should usually include some indication that the attesting official is indeed the custodian of the actual record sought to be proved. Here, however, this requirement was met since we might take judicial notice that the Circuit Clerk is by law the custodian of such records. See e.g., Miss. Code Ann. § 99-15-25 (1972) (entry of guilty pleas during vacation and recording). The copy itself recites that it is order entered in Yazoo County Circuit Court. There is no question that this order is a copy attested by the custodian.
The prosecution also introduced testimony from assistant district attorney Mayfield authenticating the original order and authenticating the copy by comparison to the original. While this type of testimony from someone not the custodian might be insufficient to establish the judgment, it further substantiates the public character of this record. Taken together with the minimally sufficient certification, the evidence is sufficient to establish that the copy is what the prosecution claimed.
In summary, we find that Monroe was not entitled to a lesser-included offense instruction on assault, that the cross-examination of Jethro Jones could not reasonably be construed as a comment on Monroe's failure to testify, and, finally, that Monroe's prior convictions were proved according to our established rules of evidence.
Having found no error, Monroe's conviction and sentence to 15 years without benefit of parole is hereby affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., specially concurs.
HAWKINS, Presiding Justice, specially concurring:
I would affirm this case, and hold that because no objection was made at trial of the blatantly inflammatory cross-examination of Jones as to his failure to testify in his own trial, Monroe has waived assigning it as error on appeal.
The majority does not stop there, however, but holds this type of cross-examination was perfectly proper. I disagree.