# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00726-SCT

*JON MARC DOWNS a/k/a*
*JOHN MARC DOWNS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2005 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN ALLEN SUBER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | JON MARK WEATHERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/16/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT**:

¶1.     When Jon Marc Downs discovered that a large sum of his money was missing, he went to his father's house to get an explanation. Downs began to hit his father. To divert his son's attention, the father pulled $200 from his billfold and handed it to Downs, who then left. Downs was convicted of robbery. The questions presented are whether the evidence supported Downs's conviction of robbery and whether Downs was entitled to have the jury instructed on simple assault as a lesser-included offense.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     Several years before the incident at issue occurred, Downs was working as a truck driver and living with his parents, Joe and Patricia Downs.  During that time, Downs began putting the money he earned at work in a savings box, which was kept at his parents' home.  Joe and Patricia Downs also put their money in this box, but their money was kept separate from their son's savings.  When Downs became unemployed, his relationship with his parents soured.  Joe Downs told his son that he could not live at the family home if he was not going to work.  At the time Downs left his parents' home, he had accumulated a substantial sum of money in the savings box.  Thereafter, Downs became self-employed, doing various odd jobs, and living with a friend in Brooklyn, Mississippi.  For about three months during this time, Downs lived in a tent under the Camp Dantzler Bridge.

¶3.     Sometime later, Downs discovered his money was missing, and he believed that his father had stolen it by sending his brother to retrieve the money from a shed on Browns Ferry Road, where Downs had buried it.  While the record does not mention any specific altercations between Downs and his father prior to the incident at issue, the testimony indicates that the two men quarreled over the whereabouts of this money several weeks prior to September 29, 2004.

¶4.     Downs and his father told different versions of the events which occurred on the morning of the incident.  Joe Downs, who was eighty-one years old, testified that, when he saw his son approaching the front door of his home, he got up to shake his son's hand.  He claims Downs hit him across the head, knocking him to the ground, and continued to hit him.

2

He began to bleed profusely as a side effect of taking Coumadin, a blood thinner. He further stated that during the fray, he reached into his pocket for his billfold, and pulled out $200, which he handed his son to "get his attention off of me so I could get out of there." After Joe Downs handed his son the money, Downs stopped hitting his father, took the money, and left the house.

¶5. Downs testified that he went to his father's house to get an explanation about what happened with his money. When he got into the house, Downs claimed his father "dove" at him and "tore" at him on the floor. Downs stated "that's when I just kicked him in his belly two or three times -- scared for my life." Downs testified that his father handed him a couple of hundred dollars out of his wallet and told him he would get him the rest. Downs took the money and left.

¶6. Joe Downs was taken to Forrest General Hospital by his neighbor, Jack Roddick, who witnessed the severity of Joe Downs' injuries shortly after the attack. According to Roddick, the skin was almost pulled off of Joe Downs's arm and he had bruises on his head. Wendi Thomas, a patrolman with the Hattiesburg Police Department, was called to Forrest General Hospital to question Joe Downs regarding the attack. Thomas testified that when she saw Downs in Trauma II, he was bleeding around his eye area. Thomas described the wound on Downs's arm as "terrible," and testified that someone at the hospital informed her that the severity of the arm wound required that it be treated as a burn. Thomas stated that Downs had purple and blue bruises on his body, which Downs indicated were very painful. Thomas later investigated the scene of the attack, and captured one photograph which depicted a large

3

piece of skin torn from Downs's arm. Patricia Downs, Joe Downs's wife, testified that he had a knot on his forehead as big as a tennis ball. Joe Downs indicated that his arm was injured, he had two broken ribs and an injury to the side of his head. Due to the nature of Joe Downs's injuries, the hospital staff informed him that they were required to call the police. Police involvement led to an investigation, and, eventually the younger Downs's arrest.

¶7.     Downs was indicted for robbery pursuant to Mississippi Code Annotated Section 97-3-73 (Rev. 2002). At the close of the evidence, Downs's counsel sought to introduce a jury instruction on simple assault, as a lesser-included offense of robbery. The trial judge refused to give the instruction on simple assault unless Downs agreed to an instruction on aggravated assault. Recognizing that a conviction for aggravated assault would result in a more severe penalty than the crime of robbery, Downs's counsel declined the judge's offer and withdrew the simple assault instruction.

¶8.     After the jury found him guilty of robbery, Downs timely perfected his appeal, asking this Court to reverse and render his conviction of robbery, claiming the State failed to prove all of the elements of robbery beyond a reasonable doubt and the verdict was against the overwhelming weight of the evidence. In the alternative, Downs claims that the trial judge's refusal of his simple assault instruction entitles him to a new trial.

4

## ANALYSIS

¶9.     Our standard in reviewing rulings on post-trial motions is an abuse of discretion.

*McLendon v. State*, 945 So. 2d 372, 384 (Miss. 2006) (*citing Dilworth v. State*, 909 So. 2d

731, 736 (Miss. 2005)).  Further, the standard of review for challenges to jury instructions

is clear.

> The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole.  A defendant is entitled to have jury instructions given which present his theory of the case.  This entitlement is limited, however,  in that the Court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Spicer v. State*, 921 So. 2d 292, 313 (Miss. 2006) (*citing Parks v. State*, 884 So. 2d 738, 746

(Miss. 2004)).

¶10.     With regard to Downs's claim that he was entitled to a lesser-included offense

instruction, we conduct de novo review, as this is a question of law.  *State v. Shaw*, 880 So.

2d 296, 298 (Miss. 2004) (*citing Ostrander v. State*, 803 So. 2d 1172, 1174 (Miss. 2002)).

## I.

¶11.     Downs was indicted for robbery pursuant to Section 97-3-73 of the Mississippi Code.

At the close of the State's evidence, Downs moved for a directed verdict, arguing that the

State had failed to prove all of the elements of robbery.  Section 97-3-73 states that:

> Every person who shall feloniously take the personal property of another in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.

5

Downs argues that the requirements of the statute were not met because the only eyewitness, Joe Downs, testified that he voluntarily gave the money in question to his son. Furthermore, Joe Downs testified that he did not believe his son had robbed him.

¶12. In attacking the State's case, Downs correctly points out that the uncontradicted evidence in the record indicates that he neither mentioned nor asked for any money. Rather, his father simply handed him the money. Therefore, Downs argued to the trial court that, because the State failed to prove beyond a reasonable doubt that he took the personal property of Joe Downs by physical force, and because robbery is a specific-intent crime, he was entitled to a directed verdict.

¶13. The State responded to these arguments, pointing out that Joe Downs "was being pummeled and in order to stop the pummeling, he gave up the wallet and, in fact, that ended." The State continued, saying, "[s]o whether he said he gave it up freely or voluntarily, I think it's still he gave it up to end the assault, and that, Your Honor, we would suggest is still robbery." Thus, the State took the position that a robbery could be committed, even where the accused had no intent to take the victim's money, and even where the victim originated the idea to give the accused the money. The trial judge disagreed with the defendant, and ultimately denied his motion.

¶14. In reviewing whether a verdict is supported by the evidence, we are required to look at the totality of the circumstances, and "our concern . . . is whether the evidence in the record is sufficient to sustain a finding adverse to [the defendant] on each element of the offense . . . . With respect to each element . . . [we must] consider all of the evidence -- not

6

just the evidence that supports the case for the prosecution -- in light most favorable to the verdict." *McKee v. State*, 791 So. 2d 804, 807 (Miss. 2001). Although the facts of this case are rather unique and, at first glance, appear more suited to a prosecution for assault, rather than robbery, we conclude after a careful review of Section 71-3-73, that the State met its burden of presenting to the jury a triable issue as to all of the elements of robbery.

> It is hornbook criminal law that the state must prove each element of the offense. *Neal v. State*, 451 So. 2d 743, 757 (Miss. 1984). Due Process requires that the state prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (internal citation omitted). There must be in the record evidence sufficient to establish each element of the crime. *Fisher v. State*, 481 So. 2d 203, 211 (Miss. 1985).

*Washington v. State*, 645 So. 2d 915, 918 (Miss. 1994).

¶15. Thus, we must determine whether the State proved all of the elements of robbery. In order to obtain a conviction for the crime of robbery, the State must prove beyond a reasonable doubt that the defendant (1) feloniously [took] (2) the personal property of another (3) in his presence or from his person and (4) against his will, (5) by violence to his person or by putting such person in fear of some immediate injury to his person . . . . Miss. Code Ann. § 97-3-73(Rev. 2006). Additionally, robbery is a specific-intent crime, which requires the prosecution to prove that the defendant took the personal property of another with the intent to permanently deprive that person of their property. *Williams v. State*, 590 So. 2d 1374, 1379 (Miss. 1991).

¶16. If the State was required to prove that Downs went to his father's home and administered the beating with the felonious intent to take his father's money from him, we

7

would be required to reverse, as the record contains no such evidence. However, the statute requires only that Downs used the threat of continued injury to take the money. This requires that we examine the facts at the moment Joe Downs pulled out the $200 and handed it to his son.

¶17. The evidence shows that Downs took the money as a *quid pro quo* to stop the beating. The evidence further shows that it was only the threat of a continued beating that caused Joe Downs to hand over the money. Joe Downs testified that he had no intention of giving his son this money until the beating ensued, and he gave his son the money only to prevent any further physical harm to himself. Thus, it was fair for the jury to conclude that, when Joe Downs took the money out of his billfold, Downs understood it was being offered only because of the threat of continued violence. Downs took advantage of that threat and its effect on his father, by taking the money in exchange for stopping the beating. This Court has stated that "a person is presumed to intend that which he does . . . ." *Lee v. State*, 244 Miss. 813, 819, 146 So. 2d 736, 738 (1962).

¶18. In considering all of the evidence in a light most favorable to the verdict, we find that the State proved each element of the offense of robbery and the verdict was not against the overwhelming weight of the evidence. We therefore decline to reverse Downs's conviction as to Issue I. However, the fact that the State produced sufficient evidence to sustain a guilty verdict for the crime of robbery does not preclude a finding that the trial court's failure to give a lesser-included-offense instruction constituted reversible error. *Mackbee v. State*, 547 So. 2d 16, 18 (Miss. 1990). We will address the merits of that issue.

8

¶19.    At the close of the evidence, counsel for Downs proposed jury instruction D-2, which was a simple-assault instruction.  The State objected to the giving of D-2, arguing that the evidence showed serious bodily injury and, therefore, the evidence did not support an instruction of simple assault.  Downs's counsel argued that simple assault "could be a lesser included offense of the charge of robbery . . . [and if the jury found] that Mr. Downs was assaulted but no taking of his personal property against his will occurred, then they can't find him guilty of [robbery]."

¶20.    The State responded, arguing that simple assault is not a lesser-included offense of robbery, and that if simple assault was a lesser-included offense of robbery, then so was aggravated assault.  The trial judge agreed with the State, responding:

> I do tend to agree that if assault is included, that the jury must determine whether it is simple or aggravated.  And if you want to say that it's a lesser included offense should the jury find Mr. Downs not guilty of robbery but guilty of aggravated assault, he's facing a more severe penalty for what would otherwise be considered a lesser included offense.  But, I think if assault is in there, I think it's a jury question as to whether or not it's simple or aggravated.

¶21.    Faced with the trial judge's refusal to grant the simple-assault instruction without including an instruction on aggravated assault, Downs's counsel was forced to withdraw proposed instruction D-2.

¶22.    We begin our analysis of this issue by observing that a defendant has an absolute right to have the jury instructed on lesser-included offenses if the evidence supports such an instruction, and there is "reversible error in not giving the lesser-included offense

instruction." *Fairchild v. State*, 459 So. 2d 793, 801 (Miss. 1984) (*citing Lanier v. State*, 450 So. 2d 69, 80 (Miss. 1984)).

¶23.    Mississippi Code Annotated Section 99-19-5 (Rev. 2004) provides that a jury may consider only those offenses "necessarily included in the offense with which he is charged in the indictment." A key consideration in determining whether a crime is a lesser-included offense of a superior crime is whether the indictment put the defendant on sufficient notice of the charges pending against him. *Shaw v. State*, 880 So. 2d 296, 301 (Miss. 2004). This Court has stated that "a lesser-included offense . . . is one in which all the essential ingredients are contained in the offense for which the accused is indicted . . . ." *Porter v. State*, 616 So. 2d 899, 909–10 (Miss. 1993). Therefore, by its very definition, a defendant is always on notice of a lesser-included offense. In other words, the superior offense cannot be committed without the lesser-included offense also being committed. *See Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985) (stating "the lesser-included crime is encompassed within the crime for which the accused is indicted.").

¶24.    It is clear that, in a factually appropriate case, simple assault is a lesser-included offense of robbery. As stated previously, our legislature has defined robbery as the "felonious[. . .] take[ing of] the personal property of another in his presence or from his person and against his will, *by violence to his person* or by *putting such person in fear of some immediate injury to his person*." Miss. Code Ann. §97-3-73 (emphasis added).

¶25.    One is guilty of simple assault who "(a) attempts to cause or purposely, knowingly or recklessly *causes bodily injury to another*; or (b) negligently causes bodily injury to

10

another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) *attempts by physical menace to put another in fear of imminent serious bodily harm . . . .*" Miss. Code Ann. § 97-3-7 (Rev. 2000) (emphasis added).

¶26.    Therefore, because the commission of a robbery necessarily includes the elements of either violence to one's person, or putting one in fear of immediate injury to his person, one cannot commit a robbery without also satisfying the statutory elements of a simple assault. And since a robbery can be committed simply by threatening "immediate injury," but without violence or the "serious bodily injury" requirement of aggravated assault, then aggravated assault cannot be a lesser-included offense of robbery.  Stated differently, it is not possible to commit a robbery without also satisfying the statutory elements of a simple assault, but it is possible to commit a robbery without satisfying the statutory elements of an aggravated assault.  We find, therefore, that simple assault, in a factually appropriate case, is a lesser-included offense of robbery, and aggravated assault is not.

¶27.    However, our inquiry does not end there.  In order for a defendant to be entitled to a lesser-included offense instruction, we must determine whether the facts presented into evidence support the lesser-included offense instruction.  *Green v. State*, 631 So. 2d 167, 173 (Miss. 1994) ("A lesser-included offense instruction is warranted where the jury could find, from the evidence presented, the defendant not guilty of the crime with which he was charged, yet guilty of the lesser-included offense."); *see also Monroe v. State*, 515 So. 2d 860, 863 (Miss. 1987).

11

¶28. This Court has stated that "the evidence in a particular case generally warrants a lesser-included offense instruction if a 'rational' or 'reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense." *Monroe*, 515 So. 2d at 863. Our review of the record leads us to conclude that the jury could not have found Downs guilty of simple assault. As stated previously, a defendant is not entitled to a lesser-included offense instruction if the evidence does not support such an instruction. *Green*, 631 So. 2d at 173. Here, entitlement to a lesser-included offense instruction on simple assault presumes that the jury could find Downs guilty of simple assault.

¶29. At some point early on in the altercation between Downs and his father, a simple assault may have been committed. However, taking into account Joe Downs's age and health, and the seriousness of the injuries inflicted upon him, we find that no reasonable juror could conclude that Downs was guilty of simple assault. We hold that, where an altercation begins with a simple assault but, as a matter of law, escalates in a continuous sequence of events to an aggravated assault, the simple assault is subsumed into the aggravated assault.

¶30. Although not specifically articulated in our prior cases, this law is not new. This Court has upheld the refusal of a trial court to give a lesser-included offense instruction on simple assault when the evidence clearly supported the crime of aggravated assault. *Jackson v. State*, 594 So. 2d 20, 22 (Miss. 1992) (this Court agreeing that the evidence did not support simple assault where defendant brutally assaulted his wife); *Harbin v. State*, 478 So. 2d 796, 797 (Miss. 1985) (this Court upholding the refusal of lesser-included offense instruction for

12

simple assault where defendant beat girlfriend, threw her on the ground and then hit her in the back of the head as hard as he could with a brick).

¶31.     The State argues that the severity of Joe Downs's injuries precluded a simple assault instruction. We agree, although the severity of the injuries is not the only element to be examined. This Court has found that, in determining whether the facts support simple, versus aggravated assault, the focus is not exclusively on the harm done, but rather, on whether the elements of the statute are satisfied. *See* ***McGowan v. State***, 541 So. 2d 1027, 1029 (Miss. 1989) (stating "many cases focus on the harm actually done, but this seems to counter the statute's plain language."). In this case, however, it is clear that the elements of the aggravated assault statute are met. Under circumstances where, as a matter of law, the actions of the defendant taken as a whole, fit only within the definition of aggravated assault – that is, where the defendant causes "serious bodily injury" "under such circumstances manifesting extreme indifference to the value of human life," then no reasonable jury could find the defendant guilty of simple assault. Such is the case here.

## CONCLUSION

¶32.     For the reasons stated herein, we find that the verdict was not against the overwhelming weight of evidence and that the State offered sufficient proof to support all of the elements of robbery. Furthermore, finding that the defendant's actions clearly arose to an aggravated assault, we find that the evidence in the record does not support the giving of a lesser-included offense instruction on simple assault, and we decline to reverse and remand for a new trial. Therefore, Downs's conviction is affirmed.

13

¶33. **CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL SERVE SEVEN (7) YEARS OF SAID SENTENCE AND UPON COMPLETION OF THE SERVICE OF THE SEVEN(7) YEARS, THE REMAINING EIGHT (8) YEARS OF SAID FIFTEEN (15) YEAR SENTENCE ARE HEREBY SUSPENDED PURSUANT TO AND IN CONFORMITY WITH THE POST- RELEASE SUPERVISION SET OUT AND AUTHORIZED IN MISS.CODE ANN SECTION 47-7-34 (1972), AS AMENDED, AND APPELLANT SHALL BE PLACED ON POST-RELEASE SUPERVISION, WITH CONDITIONS, FOR A PERIOD OF FIVE (5) YEARS. APPELLANT SHALL PAY A FINE IN THE AMOUNT OF 1,000.00; MAKE RESTITUTION TO THE FORREST COUNTY PUBLIC DEFENDERS FUND IN THE AMOUNT OF 250.00 AND 100.00 ASSESSMENT TO THE MISSISSIPPI CRIME VICTIMS COMPENSATION PROGRAM AND ALL COURT COSTS.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY.**