CUTSHALL v. STATE.

(In Banc.   May 10, 1948.)

[35 So. (2d) 318.   No. 36618.]

W. C. Sweat, of Corinth, and J. O. Clark, of Iuka, for appellant.

**Greek L. Rice**, Attorney General, by **R. O. Arrington**, Assistant Attorney General, for appellee.

**McGehee, J.,** delivered the opinion of the court.

On the former appeal of this case, a reversal was order because of a prejudicially erroneous instruction granted in favor of the State. We had first rejected the contention then made as to the insufficiency of the evidence to present an issue for the jury as to whether or not the defendant Floyd Cutshall was guilty of manslaughter by reason of his alleged culpable negligence in connection with the death of Spangler Gregson, who was killed when struck by a Ford pick-up truck driven by the accused; that is to say, the case was remanded for a new trial, solely because of the erroneous instruction. Cutshall v. State, 191 Miss. 764, 4 So. (2d) 289.

Only two grounds of error assigned are argued on this appeal. First, that the facts and circumstances testified to when the conviction now appealed from was had were not such as to show a willful or wanton disregard on the part of the accused for the safety of human life on the highway on the occasion in question so as to justify his conviction of the crime of manslaughter. Second, it is urged that the trial court was in error in permitting Elton Prewitt, who was riding with the accused at the time of the accident, and who was introduced as a witness for the State, to use as a basis for his testimony a written statement given by him to the sheriff and other local officers on the day following the accident and his own arrest and imprisonment on such charge during the year 1940, more than six years prior to the trial.

The decision on the former appeal was rendered prior to that in the case of Smith v. State, 197 Miss. 802, 20 So. (2d) 701, 161 A. L. R. 1, and it is insisted now that the case made for the prosecution on the second trial

of the defendant Cutshall is not as strong as that made against him prior to the first appeal, and that under the rule announced in the Smith case the defendant in the case at bar was entitled to a directed verdict of acquittal.

We have endeavored to determine the sufficiency of the evidence to sustain culpable negligence in accordance with the rule established in the case of Smith v. State, supra, which reviewed our previous decisions defining such negligence and then held that a higher degree of negligence would be required to support a conviction of manslaughter through culpable negligence than had been theretofore held to be necessary.

The record now before us discloses that when Gregson was run over and killed by the pick-up truck driven by the defendant Cutshall, he was assisting one Leon Deaton in the work of sprinkling a short link in a State highway where the same had been freshly graveled for repavement for a distance of 300 or 400 yards, after the original pavement became in a bad condition of repair. That the accident occurred shortly after 10 o'clock at night, when the truck of the Highway Department on which there was a water tank was being driven by said Deaton and going in a westerly direction, at a time when the deceased, Spangler Gregson, was walking behind the water truck to turn on and off the water, and was waving an efficient flashlight furnished him by the Highway Department to flag the traffic so as to prevent a collision with the water truck and injury to any one at the place where these men were at work. This extra precaution was taken because the water truck was moving at a speed of only about three miles per hour in the nighttime.

The defendant Cutshall and his companion Prewitt were heard and seen to be approaching the water truck from the rear by the deceased Gregson as he walked behind the water truck and was waving his flashlight back and forth across the highway as an additional warning to the approaching pick-up truck, aside from the warn-

ing afforded by the lighted-up ''Slow'' signs and other signals hereinafter mentioned. And he made a dying declaration in the presence of his mother and a physician in regard to the accident, the competency of which statement as evidence for the State is unchallenged. He stated to them in substance that he had a flashlight and flagged them, and it was shown by all the other witnesses that all of the other lights (including those on the truck and those which lighted up the road sign) were all burning as they ran over him, and he stated that he could not get out of the way, meaning after he saw they were still proceeding toward him on the right side of the highway, going west.

Moreover, the driver of the water truck testified that while he could not see his co-worker Gregson behind the truck at that instant, he did, nevertheless, observe the beams of light from his flashlight as he waived it back and forth across the highway and the right-of-way ditches until he heard Gregson ''holler'' when struck by the pick-up truck which then went around to the left of the water truck, going in the same direction as aforesaid, and proceeded on its way without stopping, after having struck the left of the rear end of the water truck in passing. And, it is shown that when the defendent Cutshall and his companion Prewitt were taken in custody by the officers, the front light on the righthand side of the pick-up had been broken out and its fender dented; that there was also blood, hair, and pieces of flesh on this fender, which had come from the mangled body of the said Gregson, and that his belt buckle was found about the hood of the pick-up truck.

The witness Prewitt who was also riding with the defendant in the pick-up truck, as aforesaid, was placed in jail along with the defendant Cutshall, and on the next day, August 12, 1940, he gave the written statement to the officers, either while under arrest or immediately after being releasd from arrest, and with which state-

ment he was permitted to try to refresh his memory on the trial in January 1947. The manner in which he was interrogated about the matter, over the objection of the defendant, is hereinafter discussed on the second ground assigned as error.

At the trial, the witness Prewitt's testimony, following a reading and examination by him of the written statement which he had given, was to the effect that they did not see the water truck until they had approached at a distance of about fifty feet from the rear, and that although he and the defendant had been drinking heavily during the afternoon and up until the time of the accident, the defendant was able to drive the truck all right, that the witness did not see the said Gregson at all, but knew that they had hit something and suggested to the defendant, after they had passed the water truck and were proceeding along the highway, that they should stop, but that the defendant said something about no one would know who they were, and they went on without stopping to make an investigation; and that when they learned of the incriminating circumstances of the blood, etc. being on the fender of the pick-up truck, it was suggested by the defendant that they tell that they had struck a calf on the highway.

The written statement which had been signed in the presence of the officers in August 1940 was not permitted to be introduced in evidence or read in the presence of the jury upon objection being made thereto on behalf of the defendant.

The testimony of this witness given independently of the written statement was halting, uncertain and unsatisfactory as to just what had occurred on the occasion in question, since he said that he had been through five years in the Army during the war and subsequent to the accident, and it does not appear from this record that he was looking at the statement when testifying and disclosing to the jury that he had no definite recollection,

independently of the statement, as to what had occurrd, even after he had just read it after taking the witness stand, but he testified positively that he had given the statement as to the facts and circumstances on the next day after the accident, and that the one shown him at the trial was true and correct.

But, not withstanding that in his testimony on behalf of the State the facts were very unsatisfactorily developed, it was shown without dispute that he and the defendant had passed at least four times over this link of the highway then undergoing improvement between 10 o'clock of that day and the occasion in question; and that there was a large road sign about two and one-half miles east of where Gregson was struck and killed containing the words "Danger, Road under Construction"; that there was a "Slow" sign lighted up by a flare about 150 feet to the rear of the water truck on a board about 12 inches high on each side of the traveled portion of the highway in letters about 10 or 12 inches high; that the truck was well-lighted to warn one approaching from the rear, since it had a taillight thereon and a road flare on top of the truck at the time of the accident, and were "burning good," and those on the pick-up truck were "burning fairly good;" that the highway was straight and level for at least one-half of a mile before they arrived at the scene of the accident; and that the witness and the defendant had been drinking to such an extent that the sheriff had advised them to go on to their homes on account thereof, prior to the time when this officer had learned of the death of Gregson, and he later took them into his custody, upon learning of the accident, and placed them in jail.

The defendant did not testify, nor did he offer other testimony to contradict any of the proof offered by the State. After a careful consideration of all of the facts and circumstances, we have reached the conclusion that it was a question for the jury as to whether or not the conduct of the defendant, hereinbefore set forth, a-

mounted to a reckless and wanton disregard of the safety of human life as they passed along this link of the highway under the circumstances confronting him at a rate of speed of not less than 40 to 45 miles per hour, even though he may not have actually anticipated in advance the presence of this slow moving water truck, because we think that the jury had the right to reasonably conclude from the evidence, and beyond every reasonable doubt, that the defendant had wantonly disregarded the road signs, and the other warnings given by the lights on the truck, and by the waving of the flashlight, and that his subsequent conduct evinced such a spirit of disregard for the safety of others on the highway. Of course, the defendant's criminal liability is to be determined primarily by what occurred at the time of, and immediately prior, to his striking and running over the said Gregson, but the jury was entitled to consider the subsequent conduct, including his denial to the officers that he had any accident at all, as a circumstance in regard to whether or not his entire conduct had been characterized by a spirit of wanton disregard for the safety of others.

However, it is argued that, even though it should be held that all facts and circumstances presented an issue for the jury as to the defendant's guilt of culpable negligence, we should, in any event, reverse and remand the case for a new trial because of the manner in which the witness Prewitt was examined in regard to the written statement which he had previously given to the officers.

It appears from the record that while this witness was on the stand, the written statement was handed to him, and that after he had read and examined the same, he was still unable to then relate the facts and circumstances which had transpired on the occasion in question; that is to say, the reading of the statement by him failed to refresh his memory, since he was unable to answer most of the questions propounded to him with any reas-

onable degree of certainty, and found it necessary to say in effect that the information you are asking for is contained in the statement. Most of the information sought to be elicited against the defendant from this witness never reached the hearing of the jury, since the witness would merely say in effect that the answer to your question is in the statement, and it appears that the jury was never advised as to what was in the statement.

As to the leading questions asked the witness by the prosecution, and which the defendant characterizes as a cross-examination, they did not furnish a sufficient ground for reversing the case since the trial judge repeatedly stated into the record in effect that the witness was very "reticent" about giving his testimony, and we are unable to say that these observations of the trial judge were incorrect.

In Wharton's Criminal Evidence, Vol. 3, 11th Ed., Section 1273, it is stated that: "The court may, in its discretion, permit a party to put questions to his witness on direct examination to refresh his recollection by directing his attention to a particular matter or calling his attention to his former statement, declaration, or conversation, especially when it appears that the witness is unfriendly toward the party calling him, or is trying to evade the questions put to him. Counsel may refresh the witness's recollection either by asking questions relating to prior statements or prior testimony, or by reading to him his prior testimony or portions therefrom. . . .".

In 20 Am. Jur., Sec. 946, p. 798, it is stated: "In various situations writings or memoranda made either at the time of the occurrence or transaction recorded or while the facts were fresh in the mind of the person, which are not otherwise competent evidence, may be used for the purpose of refreshing the memory of a witness. Such memoranda may be used where the witness, after consulting the memoranda, is able to testify to the facts to

which it relates from independent recollection, where he testifies that he once knew the facts and a memorandum of them was made which he knew to be correct, although he has no present recollection of the facts, or where, although the witness does not recognize or remember the writing or recollect anything contained in it, he is able to swear positively to its genuineness. All courts concur in holding that the witness may read the statement of such paper to the jury and that the jury may draw the conclusion that the statement so read to them is a true statement of the facts . . .''.

The precise objection of the defendant is that the witness, after consulting the written statement, was unable to testify to the facts to which it related from independent recollection. In the instant case, however, his failure to have an independent rcollection, after trying to refresh his memory by a reading of the statement, resulted in the State's failure to get before the jury the version of the facts as contained in the written statement, and, as heretofore, stated, the objection of the defendant to the introduction of the statement itself was sustained.

In 70 C. J., Sec. 767, p. 594, it is stated: ''It has been laid down in a number of cases, principally early ones, that, to qualify a witness to testify after an attempt has been made to refresh his memory with a writing, he must at least be able to speak from a direct recollection of the fact as to which he testifies. It is true that, where the perusal of a memorandum revives the memory of a witness, he should then testify from his refreshed recollection and without the aid of the writing. However, where a witness testifies to making a record at the time of the transaction, and that he would not have made it if it had not been true, this is a sufficient basis for him to testify as to the facts as they appear in his record, although he may not be able to recall these facts to his memory. Also, a witness may be permitted to testify directly from a memorandum or other writing, as a record of a past

recollection, provided, after seeing the writing, he has no present independent recollection of the facts set forth therein, he had one time had personal knowledge of such facts, and he knows that the writing is an accurate record thereof. . . .''

At any rate, the ground of error here assigned is not a reversible one for the further reason that it does not appear that the witness was permitted to consult the statement for his answers to the questions after he had examined the same in the first instance to refresh his memory, and the State was unable to get before the jury what was contained in the statement, except to the extent that the prosecuting attorney may have used it himself as data for formulating a few of his questions, and he was entitled to do this when the witness proved to be reluctant, as the trial court observed, about giving his testimony as to the facts inquired about.

Nor do we think that the admission of the testimony to the limited extent that the witness' memory was refreshed by the statement and the questions of the prosecuting attorney predicated thereon had the effect of violating Section 26 of the Constitution on the ground that the written statement was given in the absence of the defendant, and without the privilege of cross-examination. It was not introduced in evidence as an ex parte statement or deposition, and the jury was not permitted to read, or hear the statement read, on the trial. Morover, if the witness had been permitted to testify from the statement throughout, the privilege of cross-examination in regard thereto could have been availed of if desired.

We therefore are of the opinion that neither of the two grounds of error assigned are well-taken, and that the judgment of the trial court should be affirmed.

Affirmed.