525 So.2d 1300 (1988)
Rickey (Ricky) LIVINGSTON
v.
STATE of Mississippi.
No. 57198.
Supreme Court of Mississippi.
April 27, 1988.
*1301 Jerry L. Mills, Pyle, Dreher, Mills & Woods, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court as to Parts I and II.
SULLIVAN, Justice, for the Court as to Part III.
Rickey Livingston appeals his conviction of rape in the First Judicial District of Hinds County, Mississippi, and sentence as an habitual offender to 40 years in the custody of the Mississippi Department of Corrections without possibility of probation or parole.
This case features a violent and humiliating sexual assault which, as proven in the trial below, represented defendant's third conviction for a similar crime.[1]
The lower court's judgment is reversed by a majority of the Court because of the prosecutor's impermissible comment on Livingston's failure to testify. Parts I and II by Justice Dan Lee addresses Livingston's other assigned errors. Part III by Justice Sullivan addresses the comment on defendant's failure to testify.

INTRODUCTION
Seventeen-year-old E.C. left her Jackson-area high school about noon December 19, 1984, to begin Christmas break. She first went shopping with a friend, then went alone to the stables in north Jackson where she kept her horse, arriving at the stables on Ridgewood Road about 2:30 or 2:45 p.m. After grooming her horse for about ten minutes, preparing for a ride, a man came up from behind and startled her, asking if there were horses at the stables for sale. E.C. looked at him (he stood maybe three feet away) and pointed to another horse. Very shortly, the man grabbed her around the windpipe and began choking her. She almost lost consciousness as he took her inside a nearby equipment room, but she saw his face before he began tying her hands and feet with rope normally used for the horses.
She heard him leave the stables and also heard someone getting into her car. The man returned with a sheet from her car, which she used to protect her saddle, and he tore off a piece which he used as a blindfold. After untying her, he raped her once, then forced her to perform oral sex, and then he raped her again. She did not resist because she was very scared. The man told her to "be quiet or I'll hurt you." At times, he grabbed her so hard it left marks.
He left her blindfolded and unclothed, and told her to begin counting backward from 100. When she was sure he was gone, she dressed and ran to a dry cleaners next door to the stables and asked for help. She waited there until police and her mother arrived. She gave a description of her assailant to police and then went to Dr. James Griffin's office for an examination.
Dr. Griffin testified he prepared a rape pack. He also observed a laceration of E.C.'s hymenal ring, which at the time was still bleeding. She testified that she had never done anything like that before. Dr. Griffin also observed multiple lacerations on her lip and she had bruises on her neck. *1302 Most of her skin and her upper torso were reddened, bruised and swollen; both her wrists and her lower arms had abrasions and bruises.
Within the next two days police called and asked her to come view a lineup, at which time she picked out the defendant, Rickey Livingston.
Tests revealed semen in E.C.'s vagina and the source to be someone with secretor factors A and H. Both E.C. and Rickey Livingston have type A blood and are secretors. Debra Butler, Jackson Police Department forensic serologist, was allowed to give an expert opinion based on her tests that Livingston could not be excluded as the source of the semen.
Livingston's defense was alibi, but he did not take the stand; however, he did present four witnesses. One of them, Jackie Sandifer, testified that he saw Livingston briefly on December 19, 1984, at the United Builders Supply office in northeast Jackson sometime between 1:00 and 2:00 p.m. He did not see Livingston get into a car.
Livingston's next door neighbors testified that he was home for a great portion of the time between 2:00 and 3:00 p.m. Ms. Mary Morris testified that she talked with Livingston sometime between 2:00 and a little after 2:30. She saw him through his kitchen window while she was taking clothes to her carport laundry room. Ms. Thadamenia Morris Mixon, Mary Morris' daughter, testified she remembered talking with Livingston for 30 or 40 minutes beginning about 2:25 or 2:30. The prosecution brought out that Ms. Mixon made a prior inconsistent statement to the district attorney's investigator that she actually spoke with Livingston closer to 2:00 p.m. Ms. Mixon testified, however, that the investigator omitted that she mentioned that she did not begin talking with Livingston until waiting on her daughter and niece to return from school, which usually occurred about 2:30.
Finally, Elease White testified she came to the Livingston home December 19, 1984, to work with Mrs. Livingston on a church project. She arrived somewhere around 2:25 or 2:30 p.m., and left anywhere from 2:40 to 3:00 p.m. She saw Rickey when she arrived and a couple of times while she was there, the last being some 10 to 15 minutes before she left.
Detective R.D. Eriksen testified for the state that he drove from Livingston's home to the stables in 12 minutes taking one route and 17 minutes by taking another route, following posted speed limits.
During closing argument, the district attorney told the jury that according to the judge's instruction, they should not take into account Livingston's silence. He argued that they should consider that E.C. did testify to embarrassing details and maintained a consistent account despite able cross examination. The prosecution went on to contrast the prosecutrix's credibility with that of Livingston's alibi witnesses.
The jury returned a verdict of guilty as charged, but did not set punishment.
At the conclusion of a sentencing hearing, the trial court found beyond a reasonable doubt that Livingston was an habitual offender as alleged in the indictment. It was stipulated that Livingston's life expectancy was 41.9 years, and the trial judge sentenced him to 40 years without benefit of probation or parole, to be served consecutively with two previous convictions and sentences for rape.
The trial court overruled Livingston's motion for a new trial. This appeal followed in due course.
DAN M. LEE, Presiding Justice, for the Court:

I.

Did the State's Discovery Violation Render Refreshed Recollection Testimony Inadmissible?
Detective Eriksen testified he was present at a pre-indictment lineup where the prosecutrix identified Livingston, but on cross examination he could not recall whether Livingston was the only person the lineup who was wearing blue shoes or who was clean shaven.
*1303 On redirect the prosecution sought to introduce a photograph depicting the persons in the lineup, apparently taken during the lineup. It supposedly showed that Livingston was not wearing blue shoes and he was not the only clean shaven person. Livingston objected on the ground that the photograph was not disclosed pursuant to a discovery order entered by the trial court. The record is clear that the prosecution was not aware of the photograph until after trial began, but the photograph was part of a police file. The trial court agreed that it should have been disclosed and the prosecution withdrew its request to admit the photograph.
At the prosecution's request, however, Detective Eriksen refreshed his recollection of the lineup outside the jury's presence using the photograph. When the jury returned, Detective Eriksen testified on redirect that he had refreshed his memory and that Livingston was not the only clean shaven person in the lineup and more than one person had on dark shoes. Livingston objected to this testimony on the grounds it went outside the scope of redirect examination. The court overruled this objection. Livingston was given the opportunity to see the photograph and to ask additional questions on re-cross examination but did not avail himself of the opportunity.
On appeal Livingston argues that a discovery violation and the subsequent use of the non-disclosed material to refresh Detective Eriksen's memory presents reversible error. We disagree.
First, Livingston may not have preserved this error for review. Livingston only objected on the grounds that the testimony was outside the scope of cross examination; he did not present to the trial court the question of whether Detective Eriksen should be allowed to refresh his recollection using the photograph. Since Livingston argues the testimony was inadmissible on grounds different from those he presented to the trial court, he is barred from raising the issue for the first time on appeal. See Williamson v. State, 330 So.2d 272, 276 (Miss. 1976). See M.R.E. 103(a)(1); see also United States v. Pugliese, 712 F.2d 1574 (2d Cir.1983).
Alternatively, were we to reach the merits of Livingston's claim, we still find it to be without merit.
First, we note that Livingston was tried in December 1985, before the effective date of the Mississippi Rules of Evidence. Our pre-Rules of Evidence precedent allowed a witness to refresh his recollection from a memorandum. See Gardner v. State, 455 So.2d 796, 799 (Miss. 1984); Cutshall v. State, 203 Miss. 553, 35 So.2d 318 (1948). Our new Rule 612, M.R.E., incorporates and in some respects broadens our pre-Rules precedent. See official comment to Rule 612, M.R.E. The necessary predicate is that it must appear that the witness has no present memory and that the present memory may be refreshed from the writing. Scott v. State, 446 So.2d 580, 585 (Miss. 1984). The memorandum may be used even though it would not be admissible. Gardner, 455 So.2d at 799. Here Detective Eriksen testified that he had no present memory but that his present recollection was refreshed by looking at the photograph. This meets the predicate. Here, however, Detective Eriksen used a photograph instead of a written memorandum. We have not previously held that a witness may use a photograph, but such is generally considered to be acceptable. The federal rule has been interpreted to also include "a song, a scent, a photograph, all allusion, even a past allusion, even a past statement known to be false." U.S. v. Rappy, 157 F.2d 964, 967 (2d Cir.), cert. denied, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688 (1947) (emphasis added) (quoted in 3 J. Weinstein & M. Berger, Weinstein's Evidence, P. 612[01](2) [1987]). See also McCormick on Evidence, § 9 at 19 (Cleary ed. 1984); M.R.E. 612. We see no reason not to adopt a similar position as part of our common law of evidence.
But, Livingston argues, the photograph was not admitted because of a discovery violation, and, under Thomas v. State, 488 So.2d 1343, 1344 (Miss. 1986), when physical evidence is not disclosed as required, "such physical evidence `and testimony concerning *1304 (it) [is] ... inadmissible.'" The distinction here is that Detective Eriksen was not testifying "concerning" the physical evidence, but was instead testifying from his own refreshed memory. The memorandum itself need not be admissible. Gardner, 455 So.2d at 799.
It is true that the court has an obligation to prevent witnesses from `putting into the record the contents of an otherwise inadmissible writing under the guise of refreshing recollection.' ... [However,] [w]hen there is careful supervision by the court, the testimony elicited through refreshing recollection may be proper, even though the document used to refresh the witnesses' memory is inadmissible.
United States v. Scott, 701 F.2d 1340, 1346 (11th Cir.1983) (citing Thompson v. United States, 342 F.2d 137, 140 [5th Cir.1965]). See 2 Wharton's Criminal Evidence, § 416 (1972). Scott dealt with a nearly identical factual situation to the case at bar where undisclosed discoverable writings were used to refresh a witness's recollection. Though Scott was decided based on Fed.R.Evid. 612, we find it persuasive.
Under both our pre-Rules evidentiary practice and under M.R.E. 612, the opposing party is afforded the opportunity to examine the document used to refresh recollections. See P. Williams and C. Ellis, Mississippi Evidence § 4.9 (1984). Here, Livingston had the opportunity but did not cross examine Detective Eriksen after viewing the photograph.
We hold that where the trial court properly supervises the witness's testimony, and the opposing party is given the opportunity to review the material and cross examine the witness, and is able to introduce relevant portions of the document into evidence, the fact that the item or document is inadmissible because of a discovery violation does not necessarily prevent a witness from using it to refresh his recollection.
On this record we cannot say that Detective Eriksen's testimony was an attempt to put the photograph into evidence. There was no error.

II.

Was Livingston Denied His Constitutional Right to a Speedy Trial?
Livingston suggests he was denied his right to a speedy trial guaranteed under U.S. Const. Amend. VI, and Miss. Const. Art. 3, § 26 (1890).
Miss. Code Ann. § 99-17-1 (Supp. 1987) requires that a defendant be tried within 270 days of arraignment. In addition to this statutory right, we must also decide whether Livingston's Sixth Amendment right to a speedy trial has been violated. These rights normally attach at arraignment and indictment, respectively. See Hughey v. State, 512 So.2d 4, 7 (Miss. 1987); Darby v. State, 476 So.2d 1192, 1194 (Miss. 1985).[2]
Livingston's indictment in this case occurred September 5, 1985. The record does not reflect when or if Livingston was arraigned, and there is no suggestion in the record that a detainer was lodged or would have been appropriate. Thus, we might assume Livingston's statutory and constitutional right to a speedy trial attached on or about September 5, 1985. Trial followed on December 2, 1985. Obviously, Livingston's statutory right to a speedy trial was not violated since the trial occurred well within 270 days of arraignment.
We, therefore, must turn to the constitutional balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and since adopted and applied by this Court in several cases. See, e.g., Hughey v. State, 512 So.2d 4, 7 (Miss. 1987); Williamson v. State, 512 So.2d 868 (Miss. 1987); Kinzey v. State, 498 So.2d 814, 816-17 (Miss. 1986); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Darby v. State, 476 So.2d 1192, 1194 (Miss. 1985); Burgess v. State, 473 So.2d 432, 433 (Miss. 1985); Bailey v. State, 463 So.2d 1059, *1305 1062-64 (Miss. 1985); Perry v. State, 419 So.2d 194 (Miss. 1982).
The test requires the Court to weigh four factors:
1. Length of delay;
2. Reason for the delay;
3. The defendant's assertion of his right to a speedy trial,
4. Prejudice resulting to the defendant.
Again assuming Livingston's right to speedy trial attached on September 5, 1985, trial was delayed approximately 90 days, until December 2, 1985. The delay, if any, is shorter than that experienced by defendants in some cases where this Court has affirmed. See Hughey v. State, 512 So.2d at 7; Lightsey v. State, 493 So.2d at 379 (457 days).
Under Barker, however, there must be an actual delay before balancing is even appropriate.
The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.
Barker v. Wingo, 407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
Since Livingston's constitutional right to a speedy trial did not attach until indictment, the delay was slightly less than 90 days. We think a trial within approximately 90 days of the attachment of the speedy trial right does not amount to a presumptively prejudicial delay necessitating inquiry into the other factors of speedy trial analysis under Barker v. Wingo. Alternatively, even analyzing the other Barker factors, there is no violation.
The reason for the delay was the intervening trial on a previous rape indictment of an offense occurring December 14, 1984, five days before the indictment giving rise to this prosecution. Trial in that earlier case concluded July 16, 1985. The indictment in this case was dated September 5, 1985, and the trial followed on December 2, 1985. Livingston made no attempt to assert his right to a speedy trial.
Any prejudice to Livingston, when balanced against the other relevant factors, does not amount to an infringement of Livingston's right to a speedy trial. Livingston's failure to assert his right, the delay being attributable to the intervening trial and the relative lack of any delay, weigh against a finding in Livingston's favor. We find no merit to this alleged error.
Since the majority reverses this case for an impermissible comment on defendant's failure to testify, we find it unnecessary to reach Livingston's two other assigned errors, both of which we find to be without merit.
SULLIVAN, Justice, for the Court:

III.

Did the District Attorney Improperly Comment on Defendant's Failure to Testify?
During closing argument the District Attorney said:

Now, the Court tells you  you are not to take into consideration the fact that the defendant did not testify. That's in an instruction right here. And we don't want you to. We want you to take into consideration that [EC] got up on that stand and subjected herself to the shame, to the humiliation, to the rigors, to the embarrassment and to the torture of having to tell twelve or fourteen strange people whom she has never seen before in her life what she went through on that day. And be subject to total cross examination by the defense  two very capable lawyers who have been lawyers here for years and years  more years than we even know. Added together, there's no telling how much experience she was subject to cross examination of. And not one single time did her story vary. Not one single time. When you are telling the truth, you tell it over again a year later and it's gonna be *1306 just like it was when you told it the very day it happened, ladies and gentlemen. (Emphasis added).
Livingston argues this was an impermissible comment on his failure to testify.
Livingston did not object to this argument. The State asks us to hold that this assignment of error is procedurally barred for want of a contemporaneous objection. We decline to do so.
In two capital murder cases, Stringer v. State, 500 So.2d 928 (Miss. 1986), and West v. State, 485 So.2d 681 (Miss. 1985), which also arose in Hinds County, we considered similar assignments of error in spite of the fact that no contemporaneous objection was made. Writing for the majority in West, Presiding Justice Hawkins stated:
It is the duty of the presiding judge, as well as trial attorneys on both sides, in the conduct of a criminal case to see that the constitutional rights of an accused are not violated. A defendant has a constitutional right not to take the witness stand. See: Mississippi Constitution, Article XXVI; U.S. Constitution, Amendment V; Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). This right becomes meaningless if comment or insinuation can be made reflecting upon his failure to testify. Indeed, for over a century, there has been a statute in effect in this state which provides:
§ 13-1-9. Competency of an accused.
The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel. [Emphasis added].
As was stated in Brown v. State, 340 So.2d 718, 722 (1976), commenting on a defendant's failure to testify violates "an elementary and long established principle of law." See: Clark v. State, 260 So.2d 445 (Miss. 1972); Hines v. State, 339 So.2d 56 (Miss. 1976); Peterson v. State, 357 So.2d 113 (Miss. 1978); and Wilson v. State, 433 So.2d 1142 (Miss. 1983).
Our forefathers vouchsafed the right of an accused to remain silent in his trial. Yet there is no way to remove the suspicion the defendant himself casts upon his own defense when he chooses not to take the witness stand. He may very well be the best, if indeed not the only person to answer the proof offered by the state. When he remains silent, no common sense juror can avoid the mental question to himself of why the defendant did not take the stand.
* * * * * *
West received no protection of his constitutional right under the United States' and state constitutions from the trial court or trial counsel. If the only issue confronting us was a conviction of murder, the proof of which was overwhelming in this case, we could more easily find beyond a reasonable doubt that the error did not prejudice West. In this case, however, the ingredient of the crime which raised the charge to capital murder is extremely close, and the argument of counsel could very well have tipped the scales from murder to capital murder.
Likewise, if no constitutional infringement was involved, we could easily follow the temptation of calling this invited error.
Yet where a basic constitutional right is at stake, we must require more protection for an accused than afforded West in this case. See: State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966). The violation was so fundamental we must hold West was denied a fair trial. In Hawkins v. State, 224 Miss. 309, 330, 80 So.2d 1 (1955), we stated that where a constitutional error was violated affecting an accused's right to a fair trial the case will be reversed, regardless of the overwhelming proof of guilt.
West, 485 So.2d at 687-88.
It is very clear that our consideration of the prosecutor's comment in West was based not only on our heightened scrutiny of capital cases but also on the fundamental nature of the right asserted.
*1307 Later, in Monroe v. State, 515 So.2d 860 (Miss. 1987), and Griffin v. State, 504 So.2d 186 (Miss. 1987), also Hinds County cases, this Court applied the rationale of West. Relying upon West, in Monroe and Griffin we considered allegations that the prosecutor impermissibly commented on the defendant's failure to testify or call witnesses in spite of the lack of contemporaneous objections. According to our opinions in those cases we declined to invoke a procedural bar because the rights asserted were fundamental rights. Speaking for the Court in Monroe, Presiding Justice Dan Lee stated:
... this Court has characterized commenting on a defendant's failure to testify as violating "an elementary and long established principle of law." West v. State, 485 So.2d 681, 687 (Miss. 1985) (citations omitted).
Further, since the criminal defendant's right not to testify on his own behalf is protected by both the State and the United States Constitutions, we are not precluded from reviewing alleged constitutional violations even though defense counsel fails to make contemporaneous objections.

Griffin v. State, 504 So.2d 186, 193 (Miss. 1987), Monroe, 515 So.2d at 864.
Of course the general rule is that this Court will not consider issues which are not properly raised at trial. Our holding today is not novel or innovative. We have consistently considered errors affecting fundamental rights even in the absence of a contemporaneous objection. In Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950), Justice Percy M. Lee stated:
Constitutional rights in serious criminal cases rise above mere rules of procedure... . Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal... .
* * * * * *
We neither condone nor reward inaction. But we cannot affirm where due process has been so lacking that a conviction has resulted without proper consideration of constitutional and fundamental rights. (Citations omitted).
209 Miss. at 155-56, 46 So.2d at 97.
See also, Gallion v. State, 469 So.2d 1247, 1249 (Miss. 1985); Smith v. State, 457 So.2d 327, 333-36 (Miss. 1984); Read v. State, 430 So.2d 832, 837-41 (Miss. 1983).
As we stated in West, comments on the defendant's failure to testify violate an "elementary and long established principle of law." In West, Griffin, and Monroe, we recognized that this principle involves a constitutional right.
This case is particularly ill suited for the application of a procedural bar. We require that a contemporaneous objection be made at trial so that the trial judge can have the opportunity to cure the complained of error. However, the error complained of here is incurable. See Peterson v. State, 357 So.2d 113, 115 (Miss. 1978), (holding that trial judge's admonition of the jury to disregard prosecutor's comments on the defendant's failure to testify did not cure the error). See also Sanders v. State, 73 Miss. 444, 18 So. 541 (1895); Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895). Our cases on point clearly indicate that once such improper comments are made the defendant is entitled to a mistrial. The error is incurable. Stated another way, the prosecutor's remarks put this case in error. Nothing the trial judge or defense counsel could have done would have saved this trial.
We also require that a contemporaneous objection be made because such an objection allows counsel opposite to determine whether he should continue on a particular course. See Read v. State, 430 So.2d 832, 840 (Miss. 1983). In the case at hand once the impermissible comments were made no amount of backtracking by the prosecutor could have cured the error.
The right which the appellant seeks to assert is a fundamental right. See Monroe v. State, 515 So.2d 860, 864 (Miss. 1987); Griffin v. State, 504 So.2d 186, 193 (Miss. 1987); see also, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Griffin v. California, 380 U.S. 609, *1308 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). For nearly a century we have recognized this and have held that any comment by a prosecutor regarding the defendant's failure to testify was incurable, reversible error. See Bridgeforth v. State, 498 So.2d 796 (Miss. 1986); Simpson v. State, 497 So.2d 424 (Miss. 1986) (comment on wife's failure to testify); West v. State, 485 So.2d 681 (Miss. 1985); Jackson v. State, 440 So.2d 307 (Miss. 1983); Wilson v. State, 433 So.2d 1142 (Miss. 1983); Peterson v. State, 357 So.2d 113 (Miss. 1978); Hines v. State, 339 So.2d 56 (Miss. 1976); Clark v. State, 260 So.2d 445 (Miss. 1972); Chatman v. State, 244 Miss. 659, 145 So.2d 707 (1962); Lambert v. State, 199 Miss. 790, 25 So.2d 477 (1946); Winchester v. State, 163 Miss. 462, 142 So. 454 (1932); Guest v. State, 158 Miss. 588, 130 So. 908 (1930); Harwell v. State, 129 Miss. 858, 93 So. 366 (1922); Gurley v. State, 101 Miss. 190, 57 So. 565 (1912); Harris v. State, 96 Miss. 379, 50 So. 626 (1909); Prince v. State, 93 Miss. 263, 46 So. 537 (1908); Smith v. State, 87 Miss. 627, 40 So. 229 (1906); Hoff v. State, 83 Miss. 488, 35 So. 950 (1903); Sanders v. State, 73 Miss. 444, 18 So. 541 (1895); Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895); Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893). All of the aforementioned cases were reversed because of the error complained of here.
Recently in Bridgeforth v. State, 498 So.2d 796 (Miss. 1986), we addressed a similar assignment and defined what Mississippi Code Annotated, § 13-1-9 (1972), meant when we stated:
"The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel." (Emphasis added). This statute was cited as far back as 1893 in the case of Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893), in which this Court stated:
The word "comment", as employed in the statute, does not mean to criticize or condemn or anathematize the accused on his failure to testify. It forbids, in unmistakable language, any comment, friendly or unfriendly. It forbids any remark, of any character, in any words, upon the failure of the accused to testify. The attention of the jury is not to be called to the fact at all by counsel.

Yarbrough, 70 Miss. at 594, 12 So. 551 (Emphasis added).
Bridgeforth, 498 So.2d at 797.
In the case at hand the district attorney clearly commented on Livingston's failure to testify. Such comment is clearly prohibited by Section 13-1-9. Those who would enforce our laws should abide by our laws. Section 13-1-9 is one of our laws (as are our State and Federal Constitutions). We are sworn to uphold our laws and we take seriously the State's violation of them.
As we warned recently in Wilson v. State, 433 So.2d 1142 (Miss. 1983):
District attorneys must not directly, or by innuendo and insinuation, comment on a defendant's not testifying. Any person competent to be a prosecuting attorney knows that elementary principle of law. If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt.[3] This Court will not look for some reason to excuse such action of a prosecuting attorney, even though a new trial would be expensive to the people of the county. Such expenses, fault and blame should be placed at the door of the person who is responsible for it.
Wilson, 433 So.2d at 1146.
For the foregoing reasons we decline to raise a procedural bar. Instead we hold that this assignment of error is well taken and that this case should be reversed and remanded for a new trial.
REVERSED AND REMANDED.
As to Parts I and II, all concur.
*1309 As to Part III, DAN M. LEE, P.J., and ANDERSON and GRIFFIN, JJ., dissent.
As to Part III, ANDERSON, J., and ROY NOBLE LEE, C.J., dissent.
As to Part III, GRIFFIN, J., dissents.
DAN M. LEE, Presiding Justice, dissenting as to Part III:

III.

Did the District Attorney Improperly Comment on Defendant's Failure to Testify?
The majority reaches Livingston's claim that the prosecutor commented on his failure to testify, despite the clear failure of Livingston to make a contemporaneous objection. In this the Court strays far afield of our contemporanous objection rule, and for this reason alone, I respectfully dissent.
Livingston points to this passage from the District Attorney's closing argument:

Now, the Court tells you  you are not to take into consideration the fact that the defendant did not testify. That's in an instruction right here. And we don't want you to. We want you to take into consideration that [EC] got up on that stand and subjected herself to the shame, to the humiliation, to the rigors, to the embarrassment and to the torture of having to tell twelve or fourteen strange people whom she has never seen before in her life what she went through on that day. And be subject to total cross examination by the defense  two very capable lawyers who have been lawyers here for years and years  more years than we even know. Added together, there's no telling how much experience she was subject to cross examination of. And not one single time did her story vary. Not one single time. When you are telling the truth, you tell it over again a year later and it's gonna be just like it was when you told it the very day it happened, ladies and gentlemen.
[emphasis added] Livingston argues this was impermissible comment on his failure to testify.
Livingston did not object to this argument. The state asks us to follow our normal rule that this Court on appeal will not consider errors to which defendant did not contemporaneously object at trial. See, e.g., Cole v. State, 525 So.2d 365 (Miss. 1987) (petition for rehearing pending); Burney v. State, 515 So.2d 1154, 1156-57 (Miss. 1987); Hill v. State, 432 So.2d 427, 439-40 (Miss. 1983); Smith v. State, 430 So.2d 406 (Miss. 1983). True, this Court has seemingly applied this bar inconsistently at times, especially in dealing with alleged comments on defendant's failure to testify. See Monroe v. State, 515 So.2d 860, 864, (Miss. 1987); Griffin v. State, 504 So.2d 186, 193 (Miss. 1987); Stringer v. State, 500 So.2d 928, 940-41 (Miss. 1986). However, these cases followed from our decision in West v. State, 485 So.2d 681 (Miss. 1985). In West this Court reversed a capital murder conviction based in part on a comment on defendant's failure to testify. The Court noted:
In summary, under our heightened review obligation in this death penalty case, where a constitutional guaranty has been butchered, we are not foreclosed from protecting the accused even though his own attorney may have failed to make all the proper objections.
West, 485 So.2d at 688. The Stringer decision likewise addressed a claimed comment on defendant's failure to testify despite the lack of a contemporaneous objection in a death penalty context. Stringer, 500 So.2d at 940-41. Those decisions do not mean that this Court does not enforce the contemporaneous objection rule, see Cole v. State, at 369; rather, they reinforce this Court's obligation in a death penalty case to examine the record on our own to see that the accused received a fair trial. West, 485 So.2d at 688; Williams v. State, 445 So.2d 798, 810 (Miss. 1984); Culberson v. State, 379 So.2d 499, 506 (Miss. 1980); Bell v. State, 360 So.2d 1206, 1215 (Miss. 1978). In Griffin and Monroe we applied the same rationale outside a capital murder context in considering claims of prosecutorial misconduct which were not raised in the trial. In neither case did we find that the prosecutor impermissibly commented *1310 on the defendant's failure to testify. Though we considered the merits in both cases (though in Monroe we did so more as an alternative holding), the teaching of Griffin and Monroe is that even though this Court might consider an assignment of error, reversible error in a non-capital case will not be predicated on the prosecution's comment on defendant's failure to testify without a contemporaneous objection, unless this Court is convinced the comment prevented the defendant from receiving a fundamentally fair trial. This proposition can be seen in several non-capital cases where this Court has reversed despite the lack of a contemporaneous objection at trial. See House v. State, 445 So.2d 815, 820 (Miss. 1984) ("We tend to disregard procedural niceties where such is necessary to avoid the possibility of a serious miscarriage of justice."). See, also, Gallion v. State, 469 So.2d 1247, 1249-50 (Miss. 1985); Hooten v. State, 427 So.2d 1388, 1391 (Miss. 1983) (prosecution's failure to provide exculpatory material); Loeffler v. State, 396 So.2d 18 (Miss. 1981) (general, not specific, objection to evidence of other crime); Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950) (evidence of guilty of another crime).
The Brooks case is instructive. There, this Court quoted from Lisenba v. People of the State of California, 314 U.S. 219, 62 S.Ct. 280, 290, 86 L.Ed. 166:
The aim of the requirement of due process is ... to prevent fundamental unfairness in the use of evidence whether true or false... . As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial... .
209 Miss. at 155-56, 46 So.2d at 97.
Thus, this Court will, in effect, dismiss a claimed error for failure to follow our contemporaneous objection rule unless the error fatally affected the fundamental fairness of the trial. Here we cannot say that the prosecutor's comments denied Livingston a fundamentally fair trial. Thus, this alleged error is not grounds for reversal.
Though I do not reach the merits of Livingston's claim, we pause to reiterate our position since several recent cases have addressed this precise question. I take this opportunity to remind prosecutors that a defendant's failure to testify cannot be the subject of either an explicit comment or a non-explicit comment which may be "reasonably construed" as pointing out defendant's failure to testify. See, e.g., Griffin, 504 So.2d at 194; Bridgeforth v. State, 498 So.2d 796, 797 (Miss. 1986).
To prevent further development of what could be considered a useless line of authority, and to avoid giving unintended impetus to efforts to erode lines between improper and proper argument, we should clarify our position and give guidance to those who would dance at the edge.
In my opinion, what will be a reasonable construction of a particular comment will, out of necessity, be determined upon full reflection from a cold record. Our duty to uphold a defendant's right to remain silent may require us to resolve doubtful cases in favor of reversal. This should be all the more reason for prosecutors to avoid seeking to stretch the contours of permissible argument. For these reasons, were I to reach the merits of this case I would not hesitate to join the majority to reverse. Since Livingston failed to object to this argument, however, I would, accordingly, affirm.
ANDERSON and GRIFFIN, JJ., concur.
ANDERSON, Justice, dissenting to Part III:
Today's majority says, with evident sincerity, that it regrets the necessity of overturning the most recent of Rickey Livingston's numerous rape convictions. I, too, regret the reversal, but I cannot see the necessity of it. Therefore, I respectfully dissent.
The prosecutor's remarks obviously constituted an oblique comment on the defendant's decision not to take the stand. As such, they were patently impermissible. I *1311 have no quarrel with the majority as to that.
Nor do I object to the proposition that we should not be too eager to resort to harmless error analysis where a constitutional infraction has been involved. That, after all, is only common sense. It does not follow that the concept should be banished altogether from constitutional jurisprudence.
There are certain constitutional violations which are presumed to be so prejudicial that the reviewing court, on encountering them, must reverse without further ado. Today's majority proceeds on the assumption that the Fifth Amendment violation in the present case (prosecutorial comment on the silence of the accused) is in this class, and that infractions of this kind cannot be harmless.
I know of no such rule. In fact, the Supreme Court of the United States has held directly to the contrary. U.S. v. Hasting, 461 U.S. 499, 511-12, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 108 (1983); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967). So has the Fifth Circuit, in a case recently arising from Mississippi. Richardson v. Lucas, 741 F.2d 753, 755 (5th Cir.1984). So, on quite a few occasions, have we. Berry v. State, 374 So.2d 227, 229 (Miss. 1979); Bramlett v. State, 37 So.2d 305-306 (Miss. 1948); Fry v. State, 194 Miss. 603, 606-07, 13 So.2d 621, 622 (1943); Baird v. State, 146 Miss. 547, 551, 112 So. 705-706 (1927); House v. State, 121 Miss. 436, 437, 83 So. 611, 612 (1920); Wells v. State, 96 Miss. 500, 502-03., 51 So. 209, 209 (1910).
The common thread running through all of these decisions is that prosecutorial misdeeds of this type can be harmless error where the evidence of the defendant's guilt is so overwhelming that his conviction would have been certain in any case. Surely this describes Livingston's situation. The majority itself practically admits that the fact of his actual guilt is not open to serious question.
Something else should be said. The majority opinion quotes some eloquent language to the effect that for prosecutors, fairness and honesty are the best policies. That is all very true, but in this case I fear we have been too facile in telling the state: "If you mess up, you must do it again." The trouble is that trials are not "done" in a vacuum. We must never forget that if the state must "do it again", so, too, must the crime victims and their families. We ought to be especially sensitive to this when the crime is rape, one of the most savage and devastating violations of personal dignity in the criminal repertoire. In recent years, most have become aware that the trial of her assailant can be a frightful ordeal for a rape victim; some have gone so far as to say that such a victim is really raped twice  once by the criminal, and a second time in the courtroom. Now, after the young woman in this case has already suffered this trauma, are we to tell her that it was all for nothing, and that she must prepare to run the gauntlet a second time? Surely sense and humanity forbid it in the absence of absolute necessity.
In short, I am convinced that in spite of the prosecutor's improper remark, Rickey Livingston was justly convicted of his brutal crime. There is no need to shield him from the full penalty of the law.
ROY NOBLE LEE, C.J., joins in this dissent.
GRIFFIN, Justice, dissenting as to Part III.
I join Judge Dan Lee's dissent as to Part III, agreeing that error, if any, as to the remark of the district attorney was waived. However, I think that Judge Lee should have addressed the alleged error on its merits since it has none.
The appellant asked for and received the following instruction: "The Court instructs the jury that the defendant does not have to testify and the fact that he does not testify is not to be construed or held against him." The district attorney said even less than the instruction itself. It appears to me that if the district attorney's remark was error it was likewise error for the judge to read the instruction.
*1312 The appellant asked for the instruction and presumably his attorney would argue, as many lawyers do, that the jury is not to consider the weakness of the defendant's case but determine whether the state from its evidence has proven his guilt beyond a reasonable doubt. Here the district attorney did no more than to acknowledge that the law did not require the defendant to take the stand and prove his innocence but that the burden was on him as representative of the state to present evidence that would prove guilt beyond a reasonable doubt.
The transcript of testimony in this case reflects guilt not only beyond a reasonable doubt, but it appears to me beyond a shadow of a doubt, and that a jury verdict of not guilty would cast suspicion upon the integrity of the jurors returning it. There is nothing in this record to reflect that the defendant did not receive a fair trial by twelve honest and dedicated jurors who were influenced only by the evidence, and if error there be, it is harmless. I would affirm.
NOTES
[1] Rickey Livingston's appeal on his second conviction of rape (519 So.2d 1218) was affirmed by this Court on February 3, 1988.
[2] Livingston does not assert a violation of his right to due process, and we do not address this question. See Hooker v. State, 516 So.2d 1349 (Miss. 1987).
[3] One time is too much. This means any time in any case, after the first time.